# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CURB RECORDS, INC. and MIKE CURB FOUNDATION,<br><br>        Plaintiffs,<br><br>v.<br><br>WILLIAM LEE, as Governor of Tennessee, in his official capacity; CARTER LAWRENCE, as Commissioner of the Tennessee Department of Commerce and Insurance, in his official capacity; WILLIAM B. HERBERT IV, as Director of the Nashville Department of Codes and Building Safety, in his official capacity; and GLENN FUNK, as District Attorney General for the 20th Judicial District of Tennessee, in his official capacity,<br><br>        Defendants. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.    Plaintiffs Curb Records, Inc. and the Mike Curb Foundation bring this federal constitutional challenge to Tennessee Public Chapter No. 453, signed into law on May 17, 2021, and referred to herein as the "Compelled Sign Law." *See* 2021 Tenn. Pub. Acts ch. 453 (to be codified in Tennessee Code Annotated, Title 68, Chapter 120, Part 1). The Compelled Sign Law forces businesses and other public and private entities in Tennessee to post an inflammatory, false, offensive, and discriminatory notice on any multi-user restroom that is open to the public if the business permits transgender individuals to use that restroom based on their gender identity,

just as other employees, customers, and visitors are permitted to do. The state-mandated notice requires such businesses to falsely state that they permit the use of restrooms by "either biological sex, regardless of the designation on the restroom," which falsely and offensively conveys that a transgender woman is not a woman and that a transgender man is not a man.

2. The required notice serves no legitimate or rational purpose and solves no actual problem. It instead seeks to conscript Tennessee businesses and other institutions to spread the State's preferred message of fear and intolerance towards transgender people and to falsely portray them as a threat to the safety or privacy of other members of the public. In so doing, it also forces businesses like Curb Records and many other Tennessee employers to violate federal law, which prohibits discrimination against transgender employees.

3. The First Amendment to the United States Constitution forbids Tennessee from compelling Plaintiffs and other private entities to express the State's discriminatory message. And under the Constitution's Supremacy Clause, the Compelled Sign Law is preempted by federal law and for that independent reason is void and unenforceable.

## THE PARTIES

4. Plaintiff Curb Records, Inc. ("Curb Records") is a Tennessee corporation with its principal office in Nashville, Tennessee. It is one of the most successful independently-owned record labels in the world.

5. Plaintiff Mike Curb Foundation (the "Foundation") is a Tennessee public benefit corporation with its principal office in Nashville, Tennessee. Since their inception, Curb Records and the Foundation have provided grants and gifts totaling more than $100 million in Tennessee in support of education, historic preservation, the homeless, and a wide range of other civic and charitable endeavors in local Tennessee communities. These projects include the Curb Center at

Vanderbilt University, the Mike Curb College of Entertainment and Music Business at Belmont University, the Linda and Mike Curb Institute for Advanced Medical Education at St. Thomas Hospital, Elvis Presley's first home in Memphis, Historic RCA Studio B, Historic Columbia Studio A, Historic Quonset Hut, the Curb Institute for Music at Rhodes College in Memphis, the Fisk University Jubilee Chair, the Curb Victory Hall for homeless veterans and over 100 other Tennessee charities.

6. Defendant William Lee is Governor of the State of Tennessee. Article III, Section 10 of the Tennessee Constitution requires the governor to "take care that the laws be faithfully executed." He is responsible for upholding the laws prescribed by the legislature and ensuring compliance. Governor Lee is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. Governor Lee maintains an office in the State Capitol in Nashville. He is sued in his official capacity.

7. Defendant Carter Lawrence is Commissioner of the Tennessee Department of Commerce and Insurance. As Commissioner, Mr. Lawrence is the state fire marshal and, through the Department's Fire Prevention Division, is responsible for enforcing the building regulations contained in Tennessee Code Annotated, Title 68, Chapter 120, Part 1, including the provisions of the Compelled Sign Law. Commissioner Lawrence is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. Upon information and belief, Commissioner Lawrence resides within this District. He is sued in his official capacity.

8. Defendant William B. Herbert IV is Director of Codes and Building Safety for the Metropolitan Government of Nashville and Davidson County. The Metro Codes Department is responsible for administering building codes, works with the fire marshal to facilitate processing

of permits, and is responsible for inspecting buildings to ensure compliance with applicable law. Upon information and belief, Director Herbert's responsibilities include enforcing the building regulations contained in Tennessee Code Annotated, Title 68, Chapter 120, Part 1, including the provisions of Compelled Sign Law, for buildings in Metro Nashville. Director Herbert is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. Upon information and belief, Director Herbert resides within this District. He is sued in his official capacity.

9. Defendant Glenn Funk is District Attorney General for the 20th Judicial District of Tennessee. As District Attorney, he is responsible for the prosecution of all alleged violations of state criminal laws that occur within Metropolitan Nashville and Davidson County. One of the statutes under which District Attorney Funk is authorized to bring criminal prosecutions is Tennessee Code Annotated § 68-120-108, which establishes as a Class B misdemeanor any violation or failure to comply with the building regulations contained in Tennessee Code Annotated, Title 68, Chapter 120, including the provisions of the Compelled Sign Law. District Attorney Funk is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. Upon information and belief, District Attorney Funk resides within this District. He is sued in his official capacity.

## JURISDICTION AND VENUE

10. Plaintiffs bring this action under U.S. Const. art. VI and 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the Constitution and laws of the United States.

11. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States. This Court has personal jurisdiction over Plaintiffs and Defendants.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because one or more Defendants reside in this District and all Defendants reside in this State, and because a substantial part of the acts and events giving rise to this Complaint occurred in this District.

13. This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## FACTUAL BACKGROUND

### Enactment of the Compelled Sign Law

14. HB 1182, which would become the Compelled Sign Law, was introduced in the Tennessee General Assembly on February 10, 2021. The primary sponsor was Representative Tim Rudd. The bill passed in the House of Representatives on March 29, 2021, and passed in the Senate on April 29, 2021. HB 1182 was signed into law by Governor Bill Lee on May 17 and is scheduled to become effective on July 1, 2021.

15. The Compelled Sign Law provides that "[a] public or private entity or business that operates a building or facility open to the general public and that, as a matter of formal or informal policy, allows a member of either biological sex to use any public restroom within the building or facility shall post notice of the policy at the entrance of each public restroom in the building or facility."

16. The statute prescribes that the sign must be at least eight inches wide and six inches tall and be formatted to so that the top third of the sign consists of the word "NOTICE" in

5

Case 3:21-cv-00500  Document 1  Filed 06/30/21  Page 5 of 19 PageID #: 7

yellow letters on a red background. The lower two thirds of the sign must contain the following text in boldface, block letters in black type on a white background: "THIS FACILITY MAINTAINS A POLICY OF ALLOWING THE USE OF RESTROOMS BY EITHER BIOLOGICAL SEX, REGARDLESS OF THE DESIGNATION ON THE RESTROOM."

17. The Compelled Sign Law defines the term "policy" to mean "the internal policy of a public or private entity or such policy as the result of a rule, ordinance, or resolution adopted by an agency or political subdivision of this state."

18. The Compelled Sign Law provides that the term "public restroom":

> (A) Includes a locker room, shower facility, dressing area, or other facility or area that is:
>
>> (i) Open to the general public;
>>
>> (ii) Designated for a specific biological sex; and
>>
>> (iii) A facility or area where a person would have a reasonable expectation of privacy; and
>
> (B) Excludes a unisex, single-occupant restroom or family restroom intended for use by either biological sex.

19. The legislative history of the Compelled Sign Law and the circumstances surrounding its enactment establish that the intended purpose of the Compelled Sign Law is to require businesses and other entities to issue a warning to others if they allow transgender people to use a sex-separated restroom that matches their gender identity, rather than the sex they were assigned at birth.

20. During a hearing on the Compelled Sign Law before the House Public Service Subcommittee, Representative Rudd stated that the bill was necessary to "protect[] women and children against" people who could "tak[e] advantage of policies, executive orders, or

6

legislation[] that [] allow the 'opposite biological sex' to enter a [multi-occupancy] restroom, shower, or locker room."

21. Representative Rudd further stated that with "new [laws] . . . giving transgenders [sic] [more] rights . . . I don't want women . . . or children calling me next year [about] how they have been raped or molested [while using the bathroom facility]."

22. During a later hearing, Representative Rudd stated that the bill was suggested by a constituent at a fundraiser, and that the bill was necessary to respond to executive orders regarding rights for transgender people "coming out of Washington."

23. The Compelled Sign Law was enacted amid a flurry of hostile legislation targeting transgender people during the 2021 Tennessee legislative session. Including the Compelled Sign Law, Governor Lee signed a total of five bills into law that specifically single out transgender Tennesseans for various forms of discrimination. No other state has enacted so many bills targeting transgender people in a single legislative session.

24. Other Tennessee legislation targeting transgender people adopted in 2021 includes laws (1) banning gender-affirming healthcare for transgender youth, (2) prohibiting transgender students from competing in sex-specific school sports based on their gender identity, (3) authorizing lawsuits against public schools when a student, teacher, or school employee encounters a "member of the opposite sex" in a shared school restroom or changing facility, and (4) requiring school districts to notify parents of any instruction on sexual orientation or gender identity and allow them to opt their children out of such instruction.

25. The legislative history of the Compelled Sign Law further demonstrates that, in addition to singling out transgender people for adverse treatment, the Compelled Sign Law was not enacted to address any real problem or actual public need.

26. During the House floor debates on the Compelled Sign Law, Representative Mike Stewart asked Representative Rudd, "Has anybody come to you with the need for this bill? What's the public policy underlying the bill?"

27. Representative Rudd replied, "No one has came to me except I was at a . . . two years ago, I was at an event in Murfreesboro, for a . . . I think it's crisis pregnancy, and an individual come up to me and suggested this. I didn't run it at the time, and now with everything going on with executive orders and policies, I think it's good for everyone involved at least to put some notice . . . ."

28. Representative Stewart asked whether any other states have adopted similar legislation. Representative Rudd stated: "I don't know. I didn't base it on any other states. I based it on a need here."

29. Representative Stewart continued: "Do you know of any other state, locality, city, village, town, any entity, anywhere in the world, that's passed such a, that's seen the need for such a bill, and passed it?"

30. Representative Rudd stated: "No, I did not research that. I only saw a need for it to be here, to protect, that firmly protects both sexes. It's very shocking and can endanger people if they walk into a restroom that's marked men or women and the opposite sex is standing there. It could scare them. It could provoke violence. This way it at least lets people know that they're using a facility for both sexes, that it protects them just not to be surprised by this. At least it makes a minimal effort to let people know."

31. Representative Stewart then stated: "I just want to be sure you have every opportunity to provide a rational basis for this bill that no other entity or government anywhere

8

Case 3:21-cv-00500   Document 1   Filed 06/30/21   Page 8 of 19 PageID #: 10

in the world seems to have seen the need for. Is there any other rational basis you'd like to articulate as long as we're on the floor?"

32. Representative Rudd stated: "Tennessee's always on the cutting edge of protecting its citizens, and I see this as the cutting edge for this particular subject."

### **Impact of the Compelled Sign Law on Curb Records, the Mike Curb Foundation, and Businesses and Institutions that Support Fair and Equal Treatment of Transgender Persons**

33. Grammy award-winning record producer Mike Curb started his career almost six decades ago in California and founded Curb Records, which has operated for almost three decades in Nashville, Tennessee, and is one of the most successful independently-owned record labels in the world. Curb Records has launched the careers of numerous stars. The company has achieved more than 300 No. 1 records and has been honored by Billboard magazine as Country Music Label of the Year. Curb artists have received 33 Grammy Awards.

34. Curb Records owner Mike Curb is a former acting Governor and elected Lieutenant Governor of California, a Grammy Award-winning record producer, a Billboard record producer of the year and a BMI multi award-winning songwriter. During a distinguished career spanning almost six decades, he has earned multi-faceted success as a songwriter, producer and record company owner, covering a wide range of musical styles. As an individual, he has written more than 400 songs, and received prestigious BMI performance awards for his compositions in the pop and country music genres. He has received a star on the historic Hollywood Walk of Fame and a star on the Music City Walk of Fame in Nashville. Mike Curb also partnered with the Grammy Museum in Los Angeles where the Mike Curb Gallery is located and developed the Grammy Gallery at the Musicians Hall of Fame in Nashville.

35. Since their inception, the Mike Curb Foundation and Curb Records have provided grants and gifts totaling more than $100 million in Tennessee in support of education, historic preservation, the homeless and a wide range of services in communities associated with Curb enterprises. Through lead gifts to major projects, the Foundation has exemplified Mike Curb's determination to both give and inspire giving by others. Supported by contributions and by earnings from Curb Records, the Foundation advances the charitable spirit of America's entertainment industry. Today, while maintaining its focus on education, cultural policy, museums and historic sites, the Foundation is advancing new partnerships, addressing discrimination in all forms and the needs of underserved populations including the homeless.

36. Both Curb Records and the Foundation have as core values anti-discrimination and respect for diversity. Both entities seek to promote equality and inclusion for all. This includes equal treatment of transgender persons. Both entities maintain a policy of nondiscrimination based on sex and transgender status with respect to their employees, customers, and visitors.

37. The Compelled Sign Law stigmatizes transgender persons and encourages members of the public to view transgender persons as inferior or as a threat to their safety or privacy. It does so by requiring entities that allow transgender women to use women's restrooms and transgender men to use men's restrooms to post a false and misleading notice stating that persons of "either biological sex" are permitted to use such restrooms "regardless of the designation on the restroom."

38. The Compelled Sign Law also increases the risk that transgender persons will be subjected to violence, harassment, or discrimination; and seeks to deny transgender persons full and equal access to employment and educational opportunities and places open to the public.

39. The Compelled Sign Law promotes the creation of a hostile climate for transgender individuals in public places including workplaces in Tennessee that maintain nondiscriminatory access to restrooms. It seeks to foster a culture of fear, hostility, and rejection of transgender people and to discourage businesses, schools and universities, government agencies, and other institutions to treat transgender employees, students, customers, and visitors in a fair and nondiscriminatory manner.

40. Curb Records and the Foundation do not wish to convey that damaging and intolerant message to their employees, customers, visitors, or to the public at large, and they do not wish for their facilities to be commandeered by the State to spread that message.

41. The Compelled Sign Law interferes with Curb Records and the Foundation's businesses and charitable interests and risks driving away customers and visitors that they want to attract by forcing them to convey a message that conflicts with their corporate values of inclusion, diversity, equality, and respect for all people.

42. Curb Records and the Foundation, directly or through other controlled entities, own and/or have operations in multiple office buildings, recording studios, and historic properties in Nashville. In an effort to save world-famous Music Row, the Curb entities have purchased and restored 15 properties on Music Row. Many properties owned or operated by Curb Records and the Foundation maintain separate men's and women's restrooms that are open to both employees and visitors. Members of the public regularly visit Curb Records and Foundation properties. Some of the historic properties owned by Foundation entities offer tours to visitors.

43. Both Curb Records and the Foundation permit individuals to use sex-separated shared restrooms in accordance with their gender identity. Like other men, transgender men are

permitted to use men's restrooms, and like other women, transgender women may use women's restrooms. Neither entity asks employees or visitors about their "biological sex" or whether they are transgender before they use public restrooms. Neither entity is aware of having received a complaint from employees, visitors, or members of the public about this policy, and neither is aware of any problem or disruption having arisen because of this policy.

44. By requiring Curb Records and the Foundation to post the prescribed notice, the Compelled Sign Law forces them to speak a stigmatizing, demeaning, and discriminatory message with which they profoundly disagree. These entities seek to promote diversity and inclusion for all, but the Compelled Sign Law forces them to alter that message and instead send the false and damaging message that transgender men are not men and transgender women are not women, and that there is some reason coworkers and members of the public should fear or be concerned about everyday interactions with transgender people such as using shared sex-separated restrooms.

45. Curb Records and the Foundation are forced to speak the State's discriminatory message regardless of whether they post the prescribed notices or decline to do so. Under the Compelled Sign Law, entities that discriminate against transgender people with respect to restroom access are not required to post the prescribed signage. For this reason, the Compelled Sign Law places Curb Records and the Foundation in a dilemma with no solution: If they post the required notices, they will be directly spreading the State's stigmatizing message. If, on the other hand, they do not post the notices, transgender persons and others who are aware of the Compelled Sign Law may inaccurately believe that Curb Records and the Foundation have a policy discriminating against transgender people by forbidding them access to restrooms based on their gender identity. The very existence of the law forces Curb Records and the Foundation

to spread the State's message that transgender persons are inferior and should not be permitted to use and enjoy shared public spaces on equal terms with other people.

46. Curb Records permits transgender employees and visitors to use restrooms based on their gender identity not only because it believes it is the right thing to do, but also because federal law requires it to do so. Curb Records is subject to Title VII of the Civil Rights Act of 1964 ("Title VII") and must comply with its requirements. With respect to employees, Title VII prohibits employers from discriminating against current or prospective employees based on sex. Discriminating against employees because they are transgender is a form of sex discrimination.

47. The obligation to refrain from discrimination based on sex includes the obligation to provide restrooms and similar workplace facilities to employees on a nondiscriminatory basis. The Equal Employment Opportunity Commission has issued guidance that makes clear that transgender employees must be allowed to access restroom facilities based on their gender identity. It is the Commission's position that "employers may not deny an employee equal access to a bathroom, locker room, or shower that corresponds to the employee's gender identity. In other words, if an employer has separate bathrooms, locker rooms, or showers for men and women, all men (including transgender men) should be allowed to use the men's facilities and all women (including transgender women) should be allowed to use the women's facilities."

48. The Compelled Sign Law forces Curb Records to violate this federal law. It would force them to post stigmatizing and discriminatory notices on any shared sex-separated restrooms that could be used by employees. Title VII prohibits employers from discriminating in the terms, conditions, or privileges of employment, including by directing such discriminatory messages to their employees in workplace facilities. Title VII prohibits subjecting transgender employees to different terms and conditions of employment than non-transgender employees. It

also forbids employers from creating a hostile work environment based on sex including transgender status. Under the Supremacy Clause, this federal law preempts the Compelled Sign Law and renders it void and unenforceable.

## COUNT I

**(Violation of First Amendment – Compelled Speech)**
**(By All Plaintiffs Against All Defendants)**

49. Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

50. The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."

51. The First Amendment is applicable to the State of Tennessee under the Fourteenth Amendment to the United States Constitution.

52. The Compelled Sign Law creates a content-based regulation of speech. By compelling Plaintiffs to speak the particular message contained in the required signage, the Compelled Sign Law alters the content of Plaintiffs' speech.

53. There is no constitutionally sufficient justification for the Compelled Sign Law's content-based regulation of Plaintiffs' speech. All asserted justifications are entirely hypothetical and do not address any actual problem or need. The Compelled Sign law is not rationally related to the furtherance of any legitimate government interest, let alone narrowly tailored to substantially advance any compelling or important government interest.

54. Defendants' enforcement of the Compelled Sign Law deprives Plaintiffs of their constitutional rights under color of state law.

55. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

56. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

57. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## COUNT II

### (Violation of Supremacy Clause, U.S. Const., art. VI — Conflict Preemption)
### (By Curb Records Against All Defendants)

58. Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

59. The Supremacy Clause, U.S. Const. art. VI, cl. 2, provides that federal laws are "the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Any state law that conflicts with federal law is void and without effect.

60. Federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights by enforcing state laws that are preempted by federal law.

61. Curb Records met the minimum employee requirements for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and, therefore, is subject to the requirements of Title VII of the Civil Rights Act of 1964.

62. The Compelled Sign Law requires Curb Records and other employers who have a non-discriminatory restroom policy to post an offensive, disparaging, stigmatizing, and discriminatory notice to "warn" people about the presence of transgender people in the restroom.

This requirement singles out transgender employees for disparate treatment based on their transgender status and subjects them to a hostile work environment because they are transgender, which is prohibited by Title VII of the Civil Rights Act of 1964. Because the Compelled Sign Law conflicts with this federal law and undermines its goals and purposes, it is preempted by federal law.

63. Compliance with both federal and state law is a physical impossibility for Curb Records, and the Compelled Sign Law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, including the objective of preventing discrimination in employment based on sex.

64. Curb Records has no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

65. Accordingly, Curb Records is entitled to declaratory and injunctive relief as requested in this Complaint.

## COUNT III

**(Denial of Equal Protection – Lack of Rational Basis)**
**(By All Plaintiffs Against All Defendants)**

66. Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

67. The Fourteenth Amendment of the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

68. Under the Fourteenth Amendment, all laws must, at a minimum, rationally advance some legitimate objective of government.

69. By requiring public and private entities and businesses to post the prescribed notice on restrooms that individuals are permitted to access based on their gender identity, the Compelled Sign Law creates unique and unequal burdens on entities such as Curb Records and the Foundation that are not placed on other businesses and entities. Entities such as Plaintiffs, which do not discriminate against transgender persons with respect to restroom access, are required to post the prescribed signage, while business and entities that maintain a policy of discrimination are not required to do so.

70. Institutions such as Plaintiffs that seek to promote fair and equal treatment of all Tennesseans, including their transgender employees, customers, and visitors, are thereby compelled to actively participate in the State's goal of stigmatizing and creating a hostile climate for transgender persons by posting notices whose sole purpose and effect is to promote a hostile climate. Moreover, they are forced to contribute their own money and other resources to this effort, because the Compelled Sign Law requires the posting of the prescribed signage to be done at the covered business or entity's expense.

71. The Compelled Sign Law violates equal protection by unequally burdening Plaintiffs' exercise of their fundamental constitutional rights. Entities such as Plaintiffs that seek to promote the message of equality and fairness toward transgender persons are instead forced to speak the State's preferred message by posting the prescribed notices, while entities that do not seek to promote such a message of inclusion are not compelled to post such notices announcing their lack of inclusion (and lack of compliance with federal law).

72. The Compelled Sign Law is not rationally related to the furtherance of any legitimate government interest, let alone narrowly tailored to substantially advance any compelling or important government interest. It is instead rooted in animus toward and moral

17

Case 3:21-cv-00500   Document 1   Filed 06/30/21   Page 17 of 19 PageID #: 19

disapproval of transgender people and those who seek to promote fair and equal treatment of transgender people.

73. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

74. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

75. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows:

1. Declaring that the Compelled Sign Law violates the First Amendment of the United States Constitution, both facially and as applied to Plaintiffs, and may not be enforced by Defendants and/or any other Tennessee state and/or local official.

2. Declaring that the Compelled Sign Law is preempted by federal law and therefore is void under the Supremacy Clause, U.S. Const. art. VI, cl. 2, and may not be enforced by Defendants and/or any other Tennessee state and/or local official.

3. Declaring that the Compelled Sign Law violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, both facially and as applied to Plaintiffs, and may not be enforced by Defendants and/or any other Tennessee state and/or local official.

4. Preliminarily and permanently enjoining enforcement of the Compelled Sign Law by Defendants; their officers, employees, and agents; all individuals under any

Defendant's supervision, direction, or control; and all persons acting in concert or participation with any Defendant.

5. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees according to 42 U.S.C. § 1988 and any other applicable laws; and

6. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,    Dated: June 30, 2021

*/s/ William L. Harbison*
William L. Harbison (No. 7012)
J. Scott Hickman (No. 17407)
Phillip F. Cramer (No. 20697)
John L. Farringer (No. 22783)
SHERRARD ROE VOIGT HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
(615) 742-4200
bharbison@srvhlaw.com
shickman@srvhlaw.com
pcramer@srvhlaw.com
jfarringer@srvhlaw.com

Abby R. Rubenfeld (No. 6645)
RUBENFELD LAW OFFICE, PC
202 South Eleventh Street
Nashville, Tennessee 37206
(615) 386-9077
arubenfeld@rubenfeldlaw.com

Shannon P. Minter
(*pro hac vice* to be filed)
Christopher F. Stoll
(*pro hac vice* to be filed)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
(415) 392-6257
sminter@nclrrights.org
cstoll@nclrrights.org

Jennifer L. Levi
(*pro hac vice* to be filed)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont, Suite 950
Boston, Massachusetts 02108
(617) 388-5140
jlevi@glad.org

*Attorneys for Plaintiffs Curb Records, Inc. and Mike Curb Foundation*